## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

SPEECH FIRST, INC.,

*Plaintiff,*

v.                                                                Case No. 4:22-cv-582

RENU KHATOR, *et al.*,

*Defendants.*

## NOTICE OF DEFENDANTS' AMENDMENT TO THE
## CHALLENGED HARASSMENT POLICY

Speech First has moved this Court to preliminarily enjoin the University of Houston's harassment policy. The main defect with that policy, Speech First has explained, is that it goes far beyond the ceiling established by the Supreme Court in *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999). Last Friday, the University informed Speech First that it was amending its harassment policy to adopt the *Davis* standard—nearly three months after Speech First filed its motion, and only one business day before this Court's scheduled conference. *See* Memo. 01.D.07, *Anti-Discrimination*, (May 13, 2022), bit.ly/38vTgav (Exhibit A). The University has not argued that this amendment defeats Speech First's right to a preliminary injunction against the original policy. Out of an abundance of caution, Speech First writes to explain why it does not.

The University's eleventh-hour change is a classic example of voluntary cessation—something that Speech First has encountered in every case it has filed. *See generally Speech First, Inc. v. Fenves*, 979 F.3d 319, 328 (5th Cir. 2020) ("This is not the first

[case] in which a public university has had a sudden change of heart, during litigation, about the overbreadth … of its speech code."). Voluntary cessation cannot "deprive a federal court of its power" to preliminarily enjoin a policy unless the defendant proves that it is "'absolutely clear that the allegedly wrongful behavior could not be reasonably expected to recur.'" *Id.* The University cannot carry that "heavy burden" here for at least three reasons. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017).

**First**, the University has vigorously "defend[ed] the original polic[y]" as constitutional. *Fenves*, 979 F.3d at 32; *see also Speech First, Inc. v. Schlissel*, 939 F.3d 756, 770 (6th Cir. 2019); *Speech First, Inc. v. Cartwright*, 2021 WL 3399829, at *2 n.4 (M.D. Fla. July 29), *rev'd in other part*, 2022 WL 1301853 (11th Cir. May 2, 2022). Indeed, just last month, the University unequivocally stated that it "stands by its policy." PI Opp. (Doc. 18) 15.

**Second**, "the timing of the University's policy amendments is … suspicious." *Fenves*, 979 F.3d at 329. Although *Davis* has been the law for decades, the University changed its policy only after Speech First's "complaint was filed." *Schlissel*, 939 F.3d at 769. Then it defended its policy for months, changing the policy only one business day before the conference where this Court warned that it "may rule on motions pending." Order for Conf. (Doc. 2) ¶6.

**Third**, the University's amendment is an "ad hoc regulatory action" that can be undone as easily as it was done. *Schlissel*, 939 F.3d at 769. The amendment apparently

required little more than a memo from university leadership. *See* Ex. A at 11. Nor has the University "issued a controlling statement" that the old policy will never return. *Fenves*, 979 F.3d at 328. Even if it had, the promises of current university administrators are irrelevant because they do not bind the University itself or future administrators. *Schlissel*, 939 F.3d at 769.

Far from mooting Speech First's motion, the University's voluntarily repeal of the challenged harassment policy *strengthens* Speech First's right to a preliminary injunction. Although the equities already favored Speech First, now they are entirely one sided. An order preliminarily enjoining the challenged policy will protect Speech First's members from the real risk that the policy will be reinstated, and the University "will not be harmed by having to comply with what [it has] effectively agreed to do." *Jones v. Coleman*, 2017 WL 1397212, at *6 (M.D. Tenn. Apr. 19). As the Fifth Circuit has long recognized, "[c]hanges made by defendants after suit is filed do not remove the necessity for injunctive relief, for practices may be reinstated as swiftly as they were suspended." *Gates v. Collier*, 501 F.2d 1291, 1321 (5th Cir. 1974). So even if the University's new policy is lawful, this Court should enjoin the old one. *E.g.*, *Cartwright*, 2021 WL 3399829, at *7.

Dated: May 16, 2022

Respectfully submitted,

/s/ J. Michael Connolly
J. Michael Connolly (*pro hac vice*)
Cameron T. Norris (*pro hac vice*)
James F. Hasson (TX Bar No. 24109982)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com
cam@consovoymccarthy.com
james@consovoymccarthy.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2022, I filed the foregoing through the CM/ECF

system, which served all parties.

/s/ J. Michael Connolly

# EXHIBIT A

**UNIVERSITY OF HOUSTON SYSTEM**
**ADMINISTRATIVE MEMORANDUM**

SECTION:    General Administration                    NUMBER:  01.D.07

AREA:        Legal Affairs

SUBJECT:  Anti-Discrimination

1.    PURPOSE

1.1.    This Policy provides the exclusive mechanism for the University of Houston System and its universities ("University") to manage the reporting of unlawful Discrimination and Harassment, as defined in this Policy, by providing a prompt, fair, and impartial investigation and resolution process. This Policy does not address allegations of sexual misconduct, which includes sexual harassment. (Please see SAM 01.D.08 (Sexual Misconduct), the applicable policy that addresses prohibited sexual misconduct and establishes a mechanism for processing complaints of sexual misconduct.)

1.2.    Consistent with its commitment to addressing unlawful Discrimination and Harassment, the University complies with multiple laws that prohibit Discrimination and Harassment including, but not limited to, Title VII of the Civil Rights Act of 1964 ("Title VII"), Title IX of the Education Amendments of 1972 ("Title IX"), The Rehabilitation Act of 1973, The Americans with Disabilities Act of 1990, as amended, The Age Discrimination Act of 1975, and relevant state and local laws.

2.    POLICY

2.1.    The University is committed to maintaining and strengthening an educational, working and living environment where students, faculty, staff, visitors, and applicants for admission or employment are free from Discrimination and Harassment of any kind.  Discrimination and Harassment are antithetical to the standards and ideals of the University.  The University will take appropriate action in an effort to eliminate Discrimination and Harassment from occurring, prevent their recurrence and address their effects.

2.2.    The University is also committed to protecting, maintaining and encouraging both freedom of expression and full academic freedom of inquiry, teaching, service, and research (see SAM 01.D.15 (Freedom of Expression)).

3. GENERAL DEFINITIONS

3.1. <u>Complainant</u> – An individual who may have experienced Discrimination, Harassment, or Retaliation by a Member of the University Community based on their Protected Class. Bystanders who are not a member of the Protected Class may make reports of alleged Discrimination or Harassment per Section 6 of this Policy but are not considered Complainants under this Policy.

3.2. <u>Discrimination</u> – Treating an individual or members of a Protected Class less favorably because of their membership in that class or having a policy or practice that has a disproportionately adverse impact on Protected Class members.

For examples of Discrimination, see Section 5.

3.3. <u>Equal Opportunity Coordinator</u> – The person who is designated to coordinate efforts to comply with and implement this Policy. The Equal Opportunity Coordinator (or their designee) is responsible for conducting the administrative investigation of reports of Discrimination or Harassment and is available to discuss options, provide support, explain University policies and procedures, and provide education on relevant issues.

The Equal Opportunity Coordinators for each university are located at the following Equal Opportunity offices:

- University of Houston System/University of Houston
  Office of Equal Opportunity Services
  713-743-8835

- University of Houston – Downtown
  Office of Title IX/Equity & Diversity
  713-221-5771

- University of Houston – Clear Lake
  Office of Equity, Diversity, Inclusion – Title IX
  281-283-2305

- University of Houston – Victoria
  Office of Title IX and Equal Opportunity
  (361) 570-4835

In the event that there is a conflict of interest for a University's Equal Opportunity Coordinator, the UH System Equal Opportunity Coordinator will appoint another University's Equal Opportunity Coordinator or designee to serve in their place. If the System Equal Opportunity Coordinator has a conflict of interest, the Vice Chancellor for Legal Affairs will appoint another University's Equal Opportunity Coordinator to serve in their place.

3.4. <u>Formal Complaint</u> – A document filed by a Complainant and accepted by the Equal Opportunity Coordinator alleging Discrimination or Harassment against a Respondent and requesting that the University investigate the allegation(s).

3.5.   <u>Harassment</u> – is either:

- Subjecting an employee on the basis of their membership in a Protected Class to unwelcome conduct that is severe or pervasive enough to alter the conditions of the employee's employment and create a hostile or abusive working environment; or

- Subjecting a student on the basis of their membership in a Protected Class to severe, pervasive, and objectively offensive treatment that denies the student equal access to education or creates an intimidating, hostile, or offensive educational environment.

For examples of Harassment, see Section 5.

3.6.   <u>Member of the University Community</u> – Members of the University Community include:

- University faculty, staff, administrators, employees, and contractors;

- University students;

- Volunteers and participants in any University program or activity;

- Applicants for admission and/or employment; and

- Guests and visitors to campus, to any property owned or leased by the University, or to any property owned or leased by any University-Affiliated organization or group.

3.7.   <u>Personal Advisor</u> – An individual serving as a personal advisor or support person to a named party in a report of Discrimination, Harassment, or Retaliation.  Any named party is entitled to have one (1) Personal Advisor of their choice present during any meeting or proceeding related to the investigation.  This advisor may be an attorney, provided at their own expense, with no cost to the University.  Personal Advisors may attend any meeting, proceeding or hearing related to the investigation, but may not speak on behalf of the individual they are advising or be a witness.

3.8.   <u>Protected Class</u> – A class of persons who are protected under applicable federal or state laws against Discrimination and Harassment on the basis of race, color, sex (including pregnancy), genetic information, religion, age (over 40), national origin, disability, veteran status, sexual orientation, gender identity or status, gender expression, or any other legally protected status.

3.9.   <u>Resolution Agreement</u> – As part of the informal resolution process, when a report alleges a non-violent violation of this Policy, the Complainant and Respondent may resolve the report by agreement.  Under a Resolution Agreement, the Respondent will participate in training or other conditions as set forth in the Resolution Agreement.  The Resolution Agreement is not an admission of guilt or responsibility by the Respondent, and neither party has the right to appeal. The

Equal Opportunity office will document that the terms of the Agreement have been met and update the parties as appropriate.

3.10.   Respondent – A party or person who is designated to respond to a report or Formal Complaint. Generally, the Respondent is the person alleged to be responsible for the prohibited Discrimination, Harassment, or Retaliation alleged in the complaint. The term "Respondent" may also be used to designate persons with administrative responsibility for procedures and policies in those areas covered in a complaint.

3.11.   Retaliation – Retaliation has the meaning set forth in Section 5.2.A of this Policy.

3.12.   Student – A person who: (a) is currently enrolled at the University; (b) is accepted for admission or readmission to the University; (c) has been enrolled at the University in a prior semester or summer term and is eligible to continue enrollment in the semester or summer term that immediately follows; (d) is attending an educational program sponsored by the University while that person is on University Premises; or (e) has engaged in prohibited conduct at a time when he/she met the criteria of (a), (b), (c), or (d).

3.13.   University-Affiliated Activity – Any activity that is initiated, aided, authorized or supervised by the University or by an officially-recognized organization of the University. This also includes activities performed within the scope of employment.

3.14.   University Premises – Buildings or grounds owned, leased, operated, controlled or supervised by the University.

4.   JURISDICTION

The University has jurisdiction over, and will respond to, allegations of Discrimination or Harassment occurring on the University's Premises, at University-Affiliated Activities, and where either the Complainant or Respondent is a student, faculty member, or staff member. In addition, if conduct occurs off University Premises between two University-Affiliated individuals, the University has jurisdiction.  Other than the University Police Department which may conduct a criminal investigation as appropriate, the University does not have jurisdiction over allegations between visitors or non-affiliated persons under this Policy.

4.1.   Allegations Involving University-Affiliated Organizations

A.   If a Formal Complaint is made alleging that a University-Affiliated organization has violated this Policy, the Equal Opportunity office will notify the appropriate administrative department and/or adjudicative body over that organization to ensure a timely, equitable process to determine if a University-Affiliated Organization violated relevant University policies.

B.   The Equal Opportunity office will work in partnership with the appropriate adjudicative body should there be concurrent investigations involving individuals and organizations, including, but not limited to, sharing

information with appropriate University administrators who have a legitimate need to know.

C.    If a report is made involving a University-Affiliated Organization, the Equal Opportunity office will seek to identify any individuals who may be involved.  The Equal Opportunity office will, in collaboration with the alleged victim whenever possible, determine whether a Formal Complaint will be filed against any identified individuals, as per this Policy.

4.2.    The process outlined in this Policy is separate from any criminal proceeding related to the reported behavior and may occur while criminal proceedings are ongoing.

4.3.    Proceedings under this Policy will not be dismissed or delayed because criminal prosecution is pending, criminal charges have been dismissed, or the criminal charges have been reduced.

4.4.    Proceedings may also continue if a party is no longer employed with or a Student of the University.

4.5.    To the extent that a concern is raised in an untimely manner (more than 180 calendar days from the last incident of Discrimination or Harassment) it is within the Equal Opportunity office's discretion not to pursue the matter.

4.6.    Reports Outside of University Jurisdiction

If the University is notified that a Member of the University Community has reported an incident of Discrimination or Harassment, but the action occurred outside of the University's jurisdiction as described in this Section, the University will still take reasonable steps to ensure the individual's safety while on University Premises and to offer the individual information about resources both on and off University Premises.

5.    PROHIBITED CONDUCT

5.1.    Discrimination and Harassment

Discrimination and Harassment are violations of this Policy and will not be tolerated. The University prohibits Discrimination and Harassment against any Member of the University Community based on their membership in a Protected Class.

A.    Examples of Discrimination include, but are not limited to: denying an applicant employment because of their membership in a Protected Class, taking adverse employment or academic action against a person because of their Protected Class; denying admission to a University activity based on a person's Protected Class; failing to provide reasonable accommodations to a person with a documented disability, for pregnancy or related medical conditions (See SAM 01.D.16), and for a sincerely held religious belief.

B.    Examples of Harassment include, but are not limited to: epithets or slurs, threatening, intimidating or hostile acts or statements, and display or circulation (including through e-mail or virtual platforms) of written or graphic material in the learning, living, or working environment, as long as the conduct rises to the level where it is actionable under Section 3.5.

C.    An individual's subjective belief that behavior is intimidating, hostile, or offensive, in and of itself, is not sufficient to establish Discrimination or Harassment. The behavior must create a hostile environment from both a subjective and objective perspective such that it unreasonably interferes with, limits, or deprives a member of the university community of the ability to participate in or to receive benefits, services, or opportunities from the university's education or employment programs and/or activities. In determining whether a hostile environment exists, the university will examine the context, nature, scope, frequency, duration, and location of incidents, as well as the relationships of the individuals involved, and apply the appropriate standard according to the applicable complaint resolution procedures.

D.    A minor verbal and nonverbal slight, snub, annoyance, insult or isolated incident including, but not limited to a microaggression, is not sufficient to establish Discrimination or Harassment.   General concerns of unprofessionalism should be addressed per normal departmental operating procedures. The Equal Opportunity office may refer concerns of general professionalism back to the supervisor(s) to review and address as appropriate.

5.2.    Retaliation

A.    Retaliation under this Policy includes, but is not limited to, any adverse employment or educational action taken for making a report of unlawful Discrimination or Harassment, or for otherwise participating under this Policy ("Retaliation").

B.    The University takes reports of Discrimination and Harassment very seriously and will not tolerate Retaliation against those who make reports of Discrimination or Harassment or who participate in the investigation or adjudication process.

C.    Any actual or threatened retaliation or any act of intimidation to prevent or otherwise obstruct the reporting of Discrimination or Harassment or the participation in proceedings relating to Discrimination or Harassment, may be considered a separate violation of this Policy and may result in disciplinary sanctions.

6.    REPORTING INCIDENTS

6.1.    Any person, regardless of whether they are the person being subjected to Discrimination or Harassment, may report Discrimination, Harassment, or Retaliation to the Equal Opportunity Coordinator in person, by mail, by electronic mail, by telephone, or by the University's electronic reporting system.

An individual should contact their University's Equal Opportunity Coordinator as close to the date of the incident(s) as possible. An individual should be aware that by contacting the Equal Opportunity Coordinator, they are placing the University on notice of alleged Discrimination, Harassment, or Retaliation and, depending on the facts and circumstances of the case, the Equal Opportunity office may not be able to keep the information confidential and may be obligated to act.

6.2.    Required Reporting

A.    All employees, students, and third parties are encouraged to take reasonable and necessary action to prevent unlawful Discrimination, Harassment, and Retaliation and to report the conduct to the Equal Opportunity Coordinator.

B.    Employees in a supervisory capacity have a duty to act to not only prevent unlawful Discrimination, Harassment, and Retaliation, but to also report the conduct and behavior to the Equal Opportunity Coordinator. A supervisor who fails to act may be found to have violated this Policy, even if the underlying event does not constitute unlawful Discrimination and Harassment.

C.    All supervisors who receive a report of Discrimination or Harassment must share that information with the Equal Opportunity Coordinator and cannot maintain confidentiality, with the exception of:

1.    The staff of a counseling or health center acting in their capacity as a counseling or health provider, and

2.    Individuals who are associated with the University in the role of a pastoral counselor or confidential advisor acting in that capacity.

D.    In addition, some individuals who are not supervisors who must share reports of Discrimination or Harassment with the Equal Opportunity Coordinator include, but are not limited to:

1.    Academic Advisors

2.    Resident Advisors

3.    Elected members of Student Government Associations, and

4.      Individuals, including students, serving as supervisors, even if they are volunteers, at a University-Affiliated activity. These individuals could be teaching, graduate assistants, research assistants, chaperones, peer mentors, or retreat counselors.

These individuals are required to report because they are either in a position to do something about the alleged actions, may be perceived to be able to do something about the alleged action, or would otherwise have to report known or suspected incidents of Discrimination or Harassment.

6.3.    Anonymous Reporting

A.      Alleged victims and others not required to report may submit a report through the Fraud and Non-Compliance Hotline, which allows the option of anonymity. The University will work with anyone who is identified via a Fraud and Non-Compliance report or subsequent investigation to provide anonymity to the full extent possible under this Policy.

B.      Upon receipt of an anonymous report that implicates this Policy, the Equal Opportunity Coordinator will notify the reporter of possible options including the process to submit a Formal Complaint.

C.      Where the University cannot take formal disciplinary action because of an individual's insistence on anonymity or confidentiality, the University may pursue other steps to limit the effects of the alleged Discrimination or Harassment and attempt to prevent its recurrence.

6.4.    Reporting to Outside Entities

An individual wishing to make a complaint may also contact the U.S. Department of Education, Office for Civil Rights (OCR)

Office for Civil Rights
U.S. Department of Education
1301 Young Street, Suite 1169
Dallas, TX 75202
Phone: (800) 537-76970
FAX: (214) 767-0432

Employees may also contact the U.S. Equal Employment Opportunity Commission to complain of Discrimination or Harassment:

U.S. Equal Employment Opportunity Commission
Houston District Office
1919 Smith Street, 6th Floor
Houston, TX 77002
Phone: (800) 669-4000
FAX: (713) 651-4987

TTY: (800) 669-6820
ASL Video Phone: (844) 234-5122

The Equal Opportunity office shall maintain documents related to reports and Formal Complaints under this Policy as required by law.

7.     CONFIDENTIALITY

The confidentiality of a report or Formal Complaint under this Policy and all documents relating to the investigation will be maintained on a business need-to-know basis to the extent permitted by law.

8.     PRELIMINARY RESPONSE PROCEDURES

8.1.    When a report is received alleging a violation of this Policy, the University will take appropriate steps to assess whether additional actions, beyond a formal investigation and possible disciplinary sanctions, are appropriate. These actions may be implemented regardless of whether a Formal Complaint is filed and regardless of whether a finding of a violation is made.

8.2.    A report of a violation of this Policy does not automatically begin the formal grievance procedures outlined in this Policy. Complainants may request informal services such as confidential support resources or an informal resolution (see Appendix A).  Complainants may also seek a formal grievance process by filing a Formal Complaint as described in Appendix B.

8.3.    When the Equal Opportunity office receives a report regarding an alleged violation of this Policy, it will take reasonable measures to do the following:

•       Contact the Complainant and the Respondent to notify them of their rights and options under this Policy as appropriate;

•       Implement any appropriate Supportive Measures;

•       Conduct a preliminary investigation, as appropriate; and

•       Advise the appropriate department(s) on the results of any preliminary investigation and responsibilities per this Policy, if applicable.

9.     REQUIRED EMPLOYEE TRAINING

9.1.    Equal Opportunity Coordinators and their designees will receive training at least annually on issues related to Discrimination and Harassment and how to conduct the processes outlined in this Policy while being both trauma-informed and impartial, protecting the safety of involved parties, and promoting accountability.

9.2.    Members of the Equal Opportunity hearing board will receive training at least annually on issues related to Discrimination and Harassment. These individuals

will also receive training on the role of the Equal Opportunity office to enforce this Policy, best practices for hearings and hearing panelists, and their role in ensuring and promoting safety, due process, and accountability.

9.3.    The University will provide training for all incoming students and new employees that increase their knowledge about this Policy, their rights, and resources, as well as strategies to prevent violence, promote safety, and reduce perpetration. Employees will receive initial mandatory training within thirty (30) days after their hire date and supplemental training every two (2) years.

9.4.    The University will provide on-going prevention and awareness campaigns for students and employees that will increase their knowledge about this Policy, their rights and resources, as well as strategies to prevent violence, promote safety, and reduce perpetration.

10.    ACCOMMODATIONS

10.1.    The University prohibits discrimination against any student, faculty, or staff member based on their religion.  Reasonable workplace accommodations will be made for persons with sincerely-held religious beliefs.  Students should make requests for religious accommodation directly to their instructor (See Religious Holy Days).  Employees should make requests for religious accommodation directly to their supervisor.  If there are any concerns by any party, please contact the applicable Equal Opportunity Coordinator.

10.2.    Pregnant and parenting students and employees should refer to SAM 01.D.16 (Pregnant and Parenting Student and Employee Accommodations) for information regarding accommodations for pregnant and parenting students and employees.

10.3.    Employees who have a disability should refer to SAM 02.E.09 (Reasonable Workplace Accommodations for Employees With Disabilities) for information regarding the workplace accommodation process.

10.4.    Students who have a disability should refer to SAM 01.D.09 (Student Academic Accommodations) for information on the academic accommodation process.

11.    REVIEW AND RESPONSIBILITY

Responsible Party:    Vice Chancellor for Legal Affairs and General Counsel

Review:    Every five years

12.   APPROVAL

Approved:   _____*/Dona Cornell/*_____
Vice Chancellor for Legal Affairs and General Counsel


_____*/Renu Khator/*_____
Chancellor


Date:   _____May 13, 2022_____


13.   RELATED STATUTES, POLICIES, OR REQUIREMENTS

Equal Pay Act of 1963
Title VI & VII of the Civil Rights Act of 1964
Age Discrimination in Employment Act of 1967
Title IX of the Education Amendments of 1972
Equal Employment Opportunity Act of 1972
Section 503 & 504 of Rehabilitation Act of 1973
Vietnam Era Veterans' Readjustment Assistance Act of 1974
Americans with Disabilities Act of 1990 and the ADA Amendments Act of 2008
Civil Rights Act of 1991
Executive Order 11246
Genetic Information Nondiscrimination Act of 2008

## APPENDIX A – INFORMAL PROCESS

1.      Individuals may contact the Equal Opportunity office to discuss issues relating to unlawful Discrimination, Harassment, and Retaliation with or without filing a Formal Complaint.

2.      Either party can request an informal resolution to resolve a report. The Equal Opportunity office will determine whether informal resolution is an appropriate mechanism of potential resolution based on the nature of the allegations.   Informal resolution requires the consent of both parties.  The parties may agree upon a variety of resolutions such as modification of work assignment, training for a department, or an apology.   If the parties are unable to reach a resolution, a Formal Complaint may be filed under Appendix B, Section 1 – Formalizing the Complaint.

3.      The Equal Opportunity office may also respond to the specific needs of impacted persons and/or may address the needs of the University community.

   •      Actions may include extending interim measures provided to impacted persons such as those listed in Appendix B, Section 4 – Consideration of Interim Measures or new actions taken to respond to immediate and long-term concerns regarding personal safety, academic success, and emotional well-being.

   •      Actions to address the needs of the University community may include, but are not limited to, training (both targeted training and campus-wide programs), campus safety assessments, campus climate surveys, and evaluation of policies and procedures.

4.      The Equal Opportunity office will consider informal measures as appropriate. Outcomes may include, but are not limited to:

   1.      Maintaining documentation regarding the allegations and providing Policy information to the Complainant;

   2.      Consultation with appropriate officials to provide notice of a concern, suggestions to prevent escalation, a reminder of reporting obligations, and other Policy information as appropriate;

   3.      Referral to support services on or off University Premises;

   4.      Safety planning;

   5.      Educational conversation with Respondent; and/or

   6.      Resolution Agreement

## APPENDIX B – FORMAL COMPLAINT PROCESS

1.    **Formalizing the Complaint**

   A.    If an individual wishes to formalize a complaint, they will be asked to complete a Formal Complaint Questionnaire with their Equal Opportunity Coordinator.  The filing of a complaint of Discrimination, Harassment, or Retaliation under this Policy will not stop or delay any disciplinary action related to the Complainant or Respondent who has been found to not be performing up to acceptable standards or who has violated University rules, policies, or procedures.

   B.    The deadline for filing a Discrimination or Harassment complaint is 180 calendar days from the date of the alleged incident(s). It is within the Equal Opportunity Coordinator's discretion to pursue a matter that is untimely filed if the Equal Opportunity office receives sufficient information that demonstrates the reason for the delay as a result of extraordinary circumstances.  It should be noted that once a complaint is filed, if the Complainant decides to withdraw the complaint, the University's investigation may still proceed.

   If the alleged Complainant does not wish to pursue a Formal Complaint:

   1.    The University may determine that it will serve as the Complainant.

   2.    The decision for the University to file a complaint with the University as Complainant is not taken lightly and will be based on various factors including, but not limited to, the type of allegations alleged in the report, prior reports received, potential for repeated behavior, multiple Complainants, and/or potential on-going risk to the victim or the University Community.

   3.    When the University serves as a Complainant, it will work with the alleged victim to the extent they would like to participate.

   4.    Alleged victims who decline to serve as a Complainant will maintain certain rights as per this Policy. However, Non-Complainant alleged victims do not have appeal rights as per this Policy.

2.    **Complaint Evaluation**

   A.    The Equal Opportunity office reserves the right to not proceed with a Formal Complaint for the following, non-exclusive reasons:

   •    If a complaint is not filed timely;

   •    If the complaint on its face does not provide sufficient details or facts for a finding to be made under the Policy;

- If the complaint does not provide facts which link the alleged conduct to a Protected Class category;

- If the Complainant expressly or by action declines to cooperate with the investigation;

- If an appropriate resolution or remedy has already been achieved;

- If the conduct/behavior described in the complaint is not covered by a policy enforced by the Equal Opportunity office;

- If the University no longer has jurisdiction over the Respondent and, when appropriate, remedies have been offered to the Complainant.

B.   If the Equal Opportunity Coordinator decides to not proceed with a Formal Complaint, they will notify the Complainant within five (5) business days of the decision explaining the reason(s) for this decision. This notification will also include a statement informing the Complainant of their ability to refile their complaint if they have additional or new information and that this new complaint will be assessed on its own merits.

C.   Upon dismissal of a Formal Complaint, the Complainant may appeal the dismissal by notifying the Equal Opportunity Coordinator within five (5) business days. The Equal Opportunity Coordinator will forward the appeal to the System Equal Opportunity Coordinators, who will conduct a documentary review of the complaint. The System Equal Opportunity Coordinators will inform the Equal Opportunity Coordinator of their majority decision to support the dismissal or remand for further review. The Equal Opportunity Coordinator will inform the Complainant of the decision in writing. If the decision to dismiss is upheld, that decision is final.

D.   Within five (5) business days after receiving and accepting a Formal Complaint, the Equal Opportunity Coordinator or their designee will provide a copy of the complaint to the Respondent(s).

3.   **Response to a Formal Complaint**

A.   A Respondent's response to the complaint is due to the Equal Opportunity office within five (5) business days from the Respondent's receipt of the complaint. Extensions may be granted for good cause.

B.   The response should address and respond to the specific allegations made in the complaint and can include any other rebuttal information.

C.   A response may be provided in writing or through an in-person interview with the investigator(s).

D.      While a Respondent is not required to provide a response to the complaint or answer questions related to the investigation, this will not stop the Formal Complaint process from proceeding.

E.      A Respondent's failure to acknowledge the receipt of the complaint may be considered a violation of relevant University policies and could result in additional disciplinary action.

**4.      Consideration of Interim Measures**

A.      The Equal Opportunity office will–consider interim measures and requests for support services when a Formal Complaint has been filed to protect involved parties while the incident is investigated and adjudicated under this Policy.

B.      The Equal Opportunity office and other appropriate University administrators will work together to identify alternative arrangements that will preserve the rights of both the Complainant and the Respondent(s), as well as provide a safe overall educational or working environment while the complaint is investigated and adjudicated.

C.      Failure to adhere to the parameters of any interim measure may be considered a separate violation of this Policy and may result in disciplinary action.

D.      Non-Complainant alleged victims always maintain the right to reasonable interim measures.

**5.      Formal Investigation**

A.      Absent extenuating circumstances, an investigation will begin upon receipt of a complaint of alleged Discrimination, Harassment, or Retaliation which may be prior to receiving a response from a Respondent.

B.      The investigator(s) will attempt to interview the Complainant, the Respondent(s), and any witnesses, as appropriate.

C.      The investigator(s) will also gather and review any information they deem pertinent, as well as any information submitted by the Complainant, the Respondent(s), and/or any witnesses.

D.      Both Complainant and Respondent will be provided equal opportunity to identify witnesses and provide other inculpatory and exculpatory evidence.

E.      If during the course of an investigation additional actions that may constitute a violation of Policy are identified, the University will determine on a case-by-case basis whether and how to investigate those allegations. Facts used to make this determination include, but are not limited to, the type of action identified and whether the actions occurred during the same incident or during a separate incident.

F. Each investigation will be completed in the time necessary to ensure a thorough and fair process.

G. After reviewing all available evidence, the Equal Opportunity office will prepare a draft investigative report for review by the parties. The parties have ten (10) business days to submit any comments about the report, if they so choose.

H. The Complainant and Respondent(s) should be provided updates on the progress of the investigation and issuance of the report.

6. **Finding**

A. After consideration of any comments submitted by the parties, the Equal Opportunity office will issue a Notice of Finding simultaneously in writing to both parties and notify them of any appeal rights under this Policy.

B. The finding(s) in the Notice of Finding will be determined using a preponderance of the evidence standard, that is, whether it is more likely than not that a Respondent violated this Policy.

C. If it is determined that this Policy was violated, appropriate University action will be recommended in an effort to eliminate Discrimination, Harassment, or Retaliation, prevent its recurrence, and address its effects.

D. Even if it is determined that there was not sufficient evidence to support a violation under this Policy, a recommendation may be made that a Respondent undertake educational initiatives and/or trainings.

E. After a Notice of Finding has been issued, any party to the complaint may request to meet with the investigator(s) to discuss the investigation, finding(s), and/or to inspect the investigative file.

7. **New Information**

A. If a party has new information they believe would have significantly impacted the finding(s) (e.g., witness testimony, documents, or other tangible evidence), they may submit that information to the Equal Opportunity Coordinator.

B. If the Equal Opportunity Coordinator determines that the submitted information should be reviewed and the information was not available for the party to present during the investigation, the case may be re-opened.

C. The Equal Opportunity Coordinator will inform the party(ies) who did not bring forth the new evidence of the request to re-open the investigation and the basis for the request. These parties will have the opportunity to respond to this information, and the Equal Opportunity Coordinator will consider the response(s) in deciding whether to re-open the investigation.

D.     If the Equal Opportunity Coordinator decides to re-open the investigation, the parties will be notified, and the process will resume at the formal investigation stage set forth in Section 5 – Formal Investigation above.

8.     **Appeal**

A.     **Filing an Appeal**

   1.   An appeal of the finding(s) must be submitted in writing to the Equal Opportunity Coordinator within five (5) business days of receiving the finding(s).

   2.   The Complainant and the Respondent(s) have the right to appeal a finding for any error or procedural defect occurring during the investigation that could have significantly impacted the finding.

   3.   An appeal is not a new investigation of the complaint.

   4.   A non-appealing party does not have to participate.

   5.   The appellant may seek to withdraw an appeal by submitting a request in writing to the Equal Opportunity Coordinator prior to the scheduled start of the hearing. A withdrawn appeal or the expiration of the appeal period, whichever is longer, will conclude the matter and the finding(s) will be final.

B.     **Composition of the Board and Hearing Panel**

   1.   Members of the Board are selected from recommendations from the University's Faculty Senate, Staff Council, and Student Affairs departments/offices, who shall each recommend at least five (5) individuals to the University's President. The President shall then select a Board of eight (8) with representation from each group recommended. Except for the first Board, members shall serve staggered terms of three (3) years.

   2.   Upon the Equal Opportunity Coordinator's receipt of the appeal, they will take a poll to–identify four (4) Board members to hear the appeal and compose the hearing panel (three (3) members of the hearing panel will serve as voting members and one (1) will serve as an alternate, non-voting member).

   3.   A selected hearing panel member may request in writing not to serve on a panel based on a conflict of interest, and another board member may be substituted.

C.     **Responsibilities of the Hearing Panel**

1.     The hearing panel will make decisions using a preponderance of the evidence standard.

2.     The role of the hearing panel is to accept, remand, or reject the finding(s).

3.     The hearing panel can only recommend remanding the finding(s) if:

   a.     an error or procedural defect occurred during the investigation that could have significantly impacted its finding(s), or

   b.     further investigation is warranted for any other material reason.

4.     The hearing panel can only recommend rejecting the finding(s) if:

   a.     the weight of the evidence does not support or is contrary to the finding(s), or

   b.     an error or procedural defect that significantly impacted the finding(s) is discovered and the error cannot be remedied.

5.     While the hearing panel will have the opportunity to review any evidence presented on appeal, their role is not to reinvestigate the original complaint or to review allegations that would otherwise constitute a new complaint under this Policy or any other University policy.

D.     **Preparing for a Hearing**

1.     Absent extenuating circumstances, the Equal Opportunity Coordinator will schedule a hearing within fifteen (15) business days from the filing of the appeal, or as soon as practicable.

2.     Once the hearing is scheduled, requests to reschedule the hearing must be submitted in writing to the Equal Opportunity Coordinator.

3.     The Complainant and Respondent(s) will be notified of the composition of the hearing panel for their hearing. Within five (5) business days of this notification, the Complainant and Respondent(s) have the opportunity to object in writing to a panel member for cause. The Equal Opportunity Coordinator will consider any objection and replace the Panel member if appropriate.

4.     Each party may bring one (1) Personal Advisor of their choosing to the hearing.

5.     No later than five (5) business days prior to the hearing, all materials that will be used at the hearing must be submitted to the Equal Opportunity Coordinator or their designee, who will forward the materials to the hearing panel and will simultaneously make available for inspection or provide the materials to both parties. The materials must include:

    a.     All documents and other tangible evidence that will be used as evidence during the hearing;

    b.     The names of any witnesses and a brief summary concerning the subject matter of the witness' expected testimony; and/or

    c.     The name of any advisor to be in attendance at the hearing and whether that person is an attorney.

6.     No advisor, witness, document, or tangible evidence will be permitted at the hearing unless such information was timely submitted.

7.     No new information as described in Section 7 – New Information will be presented to the hearing panel before or during the hearing.

8.     It is the responsibility of the party wanting to present a witness to secure that witness.

**9.     Hearing**

A.     Prior to the beginning of a hearing, the members of a hearing panel will select a Chairperson for the hearing (the "Panel Chairperson").

B.     During the hearing, the Panel Chairperson may impose the following guidelines:

    1.     Impose reasonable time limits on any stage of the hearing.

    2.     Determine the relevance of, and place restrictions on, any witness or information presented.

C.     The Panel Chairperson and/or Panel may question any individual at any time during the hearing.

D.     The parties may question their own witnesses, but they cannot directly question each other or any other party's witnesses.

E.     The parties may request that the Panel Chairperson ask questions of another party or their witnesses by submitting proposed questions to the Panel Chairperson in writing either prior to or during the hearing.

F.     The Panel Chairperson may determine which questions are relevant, and the Panel Chairperson has the discretion to revise a question or to decline to ask the question.

G.  An audio recording of the hearing will be kept for the use of the Panel and for any appeal.

H.  In cases where an appellant or an appellee does not participate in or attend the hearing, the Panel will convene and make a decision based on the evidence and testimony available to the Panel. Any party who declines to participate in a hearing waives any additional right to appeal.

I.  This hearing process is an internal University process and not a formal courtroom process in which rules of evidence and courtroom procedures apply.

J.  If the Equal Opportunity Coordinator, their designee, or Panel determines it is necessary or advisable, alternative testimony options will be available such as allowing a witness to appear via other virtual means (e.g., via telephone).

## 10.  Panel Decision

A.  After the hearing has concluded, the three voting members of the Panel will deliberate in private.

B.  The Panel's decision(s) as discussed in Section 8.C.2 – Responsibilities of the Hearing Panel will be by majority vote.

C.  The Panel will communicate its decision by completing the Hearing Decision Form and forwarding it to the Equal Opportunity Coordinator within three (3) business days of the hearing.  If the decision is to remand the case to correct an investigative error(s), the Panel will indicate the error(s) to be corrected.

D.  The Equal Opportunity Coordinator will then provide a copy of the decision simultaneously to all parties involved in the complaint.

E.  If the case is remanded to correct an investigative error, the Equal Opportunity office will investigate and submit an Amended Report of Finding(s) to the same hearing panel for review. This Amended Report of Finding(s) will include the actions taken to correct the investigative error.  The review process will then restart at Section 8.D.1 – Preparing for a Hearing.

F.  At the second hearing, testimony will begin with the Equal Opportunity office's presentation, and all parties will be given the opportunity to respond to the new information provided by the Equal Opportunity office, ask the Equal Opportunity office questions, and present any relevant witnesses and/or information.

G.  If the Panel accepts or rejects the finding(s), any party or the Equal Opportunity office may appeal the Panel's decision to the appropriate administrator.

H.  Any appeal must be filed with the Equal Opportunity office in writing within five (5) business days of the Panel's decision. The Equal Opportunity office will

forward the appeal to the appropriate administrator for review. If no appeal is filed by the deadline, the Panel's recommendation(s) become final.

**11.     Final Appeal to Appropriate Administrator**

A.     The role of the appropriate administrator is to accept, reject, or remand the Panel's recommendation(s).

B.     If an appeal is filed, the appropriate administrator will review the record on appeal which may include the case file, appeal documentation, and hearing recording, and will render a decision within fifteen (15) business days from the date that the appeal is filed.

C.     If the appropriate administrator extends the fifteen (15) day deadline, they must provide an explanation to the parties and the Equal Opportunity Coordinator in writing by that deadline and every ten (10) business days thereafter.

D.     The appropriate administrator can only recommend remanding the case back to the Equal Opportunity Coordinator if they find:

1.     an error or procedural defect occurred during the investigation that could have significantly impacted the finding(s), or

2.     further investigation is warranted for any other material reason.

E.     The appropriate administrator can only reject the finding(s) if they find:

1.     the weight of the evidence does not support or is contrary to the finding(s), or

2.     an error or procedural defect that significantly impacted the finding(s) is discovered and the error cannot be remedied.

F.     The appropriate administrator can remand the case back to the Panel if they find an error or procedural defect occurred during the hearing:

1.     that could have significantly impacted the Panel's recommendation(s), or

2.     which caused harm to the appellant or appellee.

G.     If the appropriate administrator accepts or rejects the Panel's recommendation(s), the decision becomes final.

**12.     Sanctions and Remedies**

A.     If there is a finding of a violation of this Policy, and any appeal of the finding has been exhausted, the Equal Opportunity Coordinator will recommend that

appropriate University action be taken, and any sanction imposed on the Respondent(s) will be determined by and implemented by the appropriate administrator after consultation with the Equal Opportunity Coordinator.

1.  If there is a finding of a violation of this Policy against a <u>faculty member</u>, any sanctions imposed on the faculty member will be determined by and implemented by the appropriate administrator after consultation with the Equal Opportunity Coordinator and consistent with the University's faculty handbook/manual.

2.  If there is a finding of a violation of this Policy against a <u>non-faculty University employee</u>, any sanction imposed on the employee will be determined by and implemented by the appropriate administrator after consultation with the Equal Opportunity Coordinator and consistent with the University's policies and procedures related to employee discipline.

3.  If there is a finding of a violation of this Policy against a <u>student</u>, any sanction imposed on the student will be determined by and imposed by the Dean of Student's Office or its equivalent after consultation with the Equal Opportunity Coordinator and consistent with the University's policies and procedures related to student conduct/discipline.

B.  The sanctions for committing an act of Discrimination or Harassment will be commensurate with the offense and may include, but are not limited to, the following:

- Probation (including disciplinary probation)
- Temporary or permanent ban from campus locations (such as residence hall communities)
- Ban from participating in campus organizations or activities
- Disqualification from employment or student leadership positions
- Withholding of transcripts, grades, diploma, or degree
- Partial or full criminal trespass
- Suspension from employment and/or enrollment
- Revocation of admission and/or degree
- Termination of employment
- Expulsion

C.  If a party is dissatisfied with a sanction determined by the appropriate administrator under Section 12 – Sanctions and Remedies, they may appeal the sanction as follows:

    1.      Any appeal to the sanction against a <u>faculty member</u> must be addressed through the University's faculty handbook/manual;

    2.      Any appeal to the sanction against a <u>non-faculty University employee</u> must be addressed through the University's policies and procedures related to employee grievances;

    3.      Any appeal to the sanction against a <u>student</u> must be addressed through the appeal process in the University's Student Code of Conduct or its equivalent.

D.      Interim Sanctions – The University may impose interim sanctions on a Respondent found to have violated the Policy while the appeal process is pending.

E.      Remedies – Regardless of the finding(s), and in addition to sanctions that may be imposed pursuant to the appropriate disciplinary policy, the University will take appropriate action(s) to resolve complaints of Discrimination or Harassment, prevent any recurrence and, as appropriate, remedy any effects.  These actions may include, but are not limited to, the following:

    1.      Determining whether Discrimination or Harassment adversely affected the Complainant's University standing;

    2.      In conjunction with University leaders, conducting a University climate check to assess the effectiveness of efforts to ensure that the University is free from Discrimination or Harassment, and using that information to inform future proactive steps that the University will take;

    3.      Providing targeted group training;

    4.      Issuing policy statements or taking other steps to clearly communicate that the University does not tolerate Discrimination or Harassment and will respond to any incidents and to any individual who reports such incidents.

These remedies are separate from, and in addition to, any interim measures that may have been provided before the end of the University's investigation.  If the Complainant did not take advantage of a specific service (e.g., counseling) when offered as an interim measure, the Complainant should still be offered, and is still entitled to, appropriate final remedies that may include services the Complainant declined as an interim measure.

## 13.    Notification of Outcomes

A.      The Equal Opportunity office will simultaneously notify the Complainant and the Respondent(s) in writing of the outcome of the following stages of the process:

    1.      The initial finding(s), including a rationale

2.      The procedures to appeal a finding

3.      The outcome of any appeal, including any changes to the finding(s)

4.      Any interim sanctions imposed

5.      Any changes to interim sanctions

6.      The final outcome of the complaint

7.      Any imposed sanctions

8.      Changes to sanctions related to the party once the outcome is finalized

9.      Any additional remedies per Section 12(E) – Remedies.

B.      These notifications may be combined if they occur at the same time.